IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NANCY B.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 24-1212-JWL |
| FRANK BISIGNANO,[2] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's allegation of symptoms, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On May 7, 2025, Mr. Bisignano was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano is substituted for Acting Commissioner Lee Dudek as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.     Background**

Plaintiff protectively filed an application for SSDI benefits on October 6, 2021. (R. 17, 265). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed adequately to evaluate Plaintiff's allegations of disabling symptoms resulting from her back impairment in accordance with Social Security Ruling (SSR) 16-3p.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.     Discussion

Plaintiff notes that her physician, Dr. Fan, "opined that she could perform less-than-sedentary work with the ability to stand no more than 10 minutes at a time."  (Pl. Br. 6) (citing R. 746, 1030-32).  She notes she reported significant pain and limitations, she reported she could stand only ten minutes on a good day and only up to three minutes on a bad day, and that stabbing pain in her neck and back radiated to her arms and legs causing difficulty holding her phone or blow-drying her hair.  Id.  She notes the ALJ acknowledged her reported limitations but found she could stand and/or walk up to six

hours in an eight-hour workday and lift twenty pounds up to one-third of a workday.  (Pl. Br. 6-7).  She argues, "the ALJ failed [] adequately [to] explain her decision to reject [Plaintiff's] reports that pain limited her ability to stand and required her to lie down or sit during several bad days per month."  Id.  She continues, arguing the ALJ rejected [her] reported symptoms and limitations without identifying any evidence within the record that was inconsistent with [her] reported symptoms and limitations."  Id.

Plaintiff argues the ALJ offered only three reasons to discount her alleged symptoms; "(1) medical imaging was purportedly inconsistent with [Plaintiff's] reported limits, (2) physical examinations purportedly undermined [her] self-reported restrictions, and (3) [her] activities of daily living were 'somewhat normal.'"  Id. 7-8.  Plaintiff argues the ALJ erred in discounting Plaintiff's allegations on these bases because she downplayed the severely abnormal imaging evidence; acknowledged that Plaintiff exhibited abnormalities on physical exams but relied on normal examination findings which do not necessarily undermine Plaintiff's allegations of pain; and failed to explain how Plaintiff's engagement in a somewhat normal level of daily activities was inconsistent with her reported limitations.  Id. 8-10 (citing Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993); and Kellams v. Berryhill, 696 F. App'x 909, 914 (10th Cir. 2017)).  Plaintiff argues that although the ALJ "concluded there were inconsistencies between [Plaintiff's] reported limitation and the evidence, she failed to identify any."  Id. 11.  She argues, "Instead, the ALJ relied upon [Plaintiff's] diagnostic imaging, her physical examination findings, and her reported activities of daily living—all of which were actually consistent with [her] reported limitations—to reject her symptoms."  Id.

### A.     Standard for Evaluating Plaintiff's Allegations of Symptoms

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential.  Such determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations[3] are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving a claimant's allegations.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  However, where the ALJ merely notes the law governing assessment of allegations of symptoms, discusses the evidence in general terms, and finds in a conclusory fashion that the evidence does not support a claimant's allegations, remand is necessary to allow the ALJ to link his findings to the evidence.  Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995).

---

[3] Talley, Broadbent, Wilson, Hackett, Glass, Luna, Thompson, and Kepler were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on May 28, 2024, when this case was decided.  Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p and is no longer a valid factor to be considered.

The framework for a proper analysis of a claimant's allegation of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.  See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The Commissioner has promulgated regulations suggesting relevant factors to be considered:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures the claimant has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  These include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler, 68 F.3d at 391 (quoting Thompson, 987 F.2d at 1489).

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in

the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same). But "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Therefore, where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

### B.     The ALJ's Discussion and Findings

The ALJ explained she followed the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p as noted above and explained that she had applied the Commissioner's two-step process in considering Plaintiff's allegations of symptoms. (R. 24). This process is consistent with the Tenth Circuit's three-point process explained above. She summarized Plaintiff's allegations of disabling symptoms:

> [Plaintiff] noted she was missing 2-3 days per week and sometimes more due to whole body pain, including in the neck and back. She stated she is in her recliner or bed and on bad days (10 times a month), as she has stabbing pain in her back, neck aches, and throbbing pain in her legs. [sic] She reported the pain limits her ability to use her hands, explaining she can do and activity [sic] for 10 minutes before she has to stop. She reported she

8

> is depressed and has emotional problems, noting she cannot function as a family member and/or work. She stated she can walk 22 steps on a bad day and 142 steps on a good day, stand for 2-3 minutes on a bad day and 10 minutes on a good day, and sit for 5 minutes on a bad day and 20 minutes on a good day. On a good day, she stated she is up every 2 hours and on a bad day every hour due to pain. She estimated she sleeps maybe 6-7 hours total. She reported she cannot do activities outside the home like she used to and cannot not hold the phone or blow dry her hair.

(R. 25). She found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id.

The ALJ noted that in October 2021 Plaintiff "reported an increase in pain that affected her activities of daily living and physical functioning, noting she had a cervical fusion in the past," reported pain in her neck, down her left arm, and in her right knee with no injury to explain the pain, but "declined an orthopedic referral for her right knee pain." Id. (citing Ex. B1F, pp. 16, 17, 19; R. 779, 780, 782). She noted, "Subsequent records show [Plaintiff] reported improvement, noting the steroid worked; however, she continued to endorse increased neck and left arm pain." Id. at 26 (citing Ex. B8F, 34-41; R. 921-28).

The ALJ noted that Plaintiff received a consultative evaluation in August 2022 wherein fibromyalgia tender points were appreciated in several locations, but a positive control was also noted at the thumbnail. Id. (citing Ex. B5F, p. 3; R. 860). The ALJ noted the examination revealed Plaintiff

> had no difficulty with getting on and off the examining table or with heel and toe walking, mild difficulty with squatting and arising from the sitting position, and moderate difficulty with hopping. Range of motion was full

9

> except in the lumbar and cervical spines. Straight leg raising was negative. Grip strength was 5/5 bilaterally.

(R. 26) (citations omitted) (citing B5F, pp.4, 6-8; R. 861, 863-65). The ALJ noted that x-ray imaging "of the lumbar spine [(on August 11, 2022)] showed severe disc degenerative changes at L5-S1 with endplate degenerative changes that appeared more prominent since the previous study" on February 21, 2012. Id. (citing Ex. B6F, p.2; R. 868).

The ALJ noted Plaintiff continued with pain management and "[in] June 2023, she reported 4/10 pain. She stated she was doing well on her current medication regimen." Id. at 27 (citing B12F, p.12; R. 1002). She noted Plaintiff had another consultative evaluation in August 2023 wherein she reported impairments consistent with the previous evaluation and the physician reported identical difficulties as the prior examination—

> no difficulty with getting on and off the examining table or with heel and toe walking, mild difficulty with squatting and arising from the sitting position, and moderate difficulty with hopping. Range of motion was full except in the lumbar and cervical spines. Straight leg raising was negative. Grip strength was 5/5 bilaterally.

Id. (citations omitted) (citing B10F, pp. 4, 6-8; R. 981, 983-85).

Regarding Plaintiff's mental health treatment records, the ALJ noted that in September 2022 Plaintiff reported increased anxiety but "Despite her reports, her mood and affect were normal." Id. 28 (citing B9F, p.43; R. 972). The ALJ noted that in May 2023 Plaintiff "requested medication to help with her mood. She endorsed depression, anxiety, and stress. [But] She was alert with normal mood and affect." Id. (citations omitted) (citing B13F, p.13; R. 1022). Finally, the ALJ noted Plaintiff had a consultative

10

mental status examination in September 2023. (R. 28). She noted the report of that examination revealed, "The range and intensity of [Plaintiff's] presentation was not fitting with presentation and words spoken not in agreement." Id. (citing Ex. B11F, 2; R. 988).

The ALJ summarized her evaluation of Plaintiff's allegations of limitations, "In sum, the record lacks medical evidence to support the claimant's allegations of her limitations. … [T]he evidence does not indicate that her conditions result in debilitating functional limitations." Id. at 29. She later explained, "Simply put, the claimant's allegations of disabling limitations are not fully supported by or consistent with the objective medical evidence and examination findings as noted above." Id. She continued,

> Overall, these findings do not support the degree of limitation alleged by the claimant and any limitations associated with abnormal findings have been accounted for in the residual functional capacity in an abundance of caution and to prevent exacerbation of pain and symptoms.

Id. at 30.

The ALJ concluded the record of Plaintiff's mental health treatment does "not support the degree of limitation alleged by the claimant and any limitations associated with abnormal findings have been accounted for in the residual functional capacity." Id. As Plaintiff points out, the ALJ considered Plaintiff's daily activities and concluded:

> Despite her impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. Some of the mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. It is not that the undersigned concludes that the claimant's daily activities are unlimited, as her residual functional capacity reflects that her physical and mental

11

>limitations likely pose some restriction on her daily activities. However, the undersigned is not persuaded that her daily activities are entirely consistent with her allegations of disability.

(R. 30-31).

The ALJ found the prior administrative medical finding of Dr. Rehman, the state agency medical consultant at the reconsideration level only partially persuasive, and explained:

>The residual functional capacity in this decision is slightly more limiting to avoid exacerbation of her symptoms, including pain. She is limited to occasional climb of ramps and stairs, occasional balance and kneel and is limited in exposure to heat to avoid triggering or exacerbating headaches, tachycardia, palpitations, diabetes symptoms and in consideration of her obesity. The diminished sensation in the left foot is contemplated by the limitations on climbing and balance as well as the other postural limitations. She is also restricted against hazards for safety reasons based on her impairments, including obesity.

Id. 31 (citations omitted). The ALJ also found the prior administrative medical finding of Dr. Panek, the state agency medical consultant at the initial level only partially persuasive, and explained:

>The limitations [in Dr. Panek's opinion] are not consistent with other evidence. At a later exam, grip strength was 5/5 bilaterally and she had 40 pounds of grip strength in the right hand and 60 pounds in the left hand with preserved dexterity. Additionally, these findings are not consistent with subsequent evidence of record, including the more recent consultative evaluation which showed 20 pounds grip strength in the right hand and 10 pounds on the left hand with 5/5 grip strength bilaterally and preserved dexterity. While the claimant was noted to have diminished sensation in the left foot, her gait has been assessed as normal. Overall, the lack of supportability and consistent [sic] diminishes the finding's persuasive value. The residual functional capacity does limit exposure to vibration and to no exposure to hazards to avoid exacerbating her levels of pain and for safety reasons.

Id. 32 (citations omitted).

The ALJ found the opinion of Plaintiff's physician, Dr. Fan, unpersuasive, and explained why:

> His records do show diffuse fibromyalgia tender points and unspecified limited range of motion of the lumbar spine, which are contemplated by the limitations in the residual functional capacity limitations. However, the opinion is not consistent with other evidence of record, including the findings at the consultative evaluations, which noted diminished sensation of the left foot but no gait abnormalities, preserved motor function and no difficulty with heel and toe walking. A need to use a cane due to such factors as inability to bear weight, significant weakness or instability is not shown. His records also do not show deficits in manipulation, inability to perform postural activities, or other findings to support a need for breaks, need for elevation, off task behavior or absences. Overall, the lack of supportability and consistency diminishes the opinion's persuasive value and suggests it is based, at least in part, on the claimant's own subjective reports instead of objective findings.

(R. 32) (citations omitted)..

Finally, the ALJ found Mr. Walter's opinion, formed based on his consultative examination of Plaintiff, persuasive. As related to her evaluation of Plaintiff's allegations of symptoms, the ALJ found Mr. Walter's opinion of the ability for "3-4 step instructions has been interpreted as detailed, but not complex, instructions in the residual functional capacity [assessed] and is consistent with her reports of caring for pets, preparing meals, d[r]iving, shopping by computer, paying bills, handling a savings account, texting, video chatting, and reading." Id. 33.

### C.   Analysis

Plaintiff's appeal to Dr. Fan's opinion "that she could perform less-than-sedentary work with the ability to stand no more than 10 minutes at a time," (Pl. Br. 6) (citing R. 746, 1030-32), is unavailing because the ALJ found Dr. Fan's opinion unpersuasive,

explained her reasons for doing so, those reasons are supported by record evidence, and Plaintiff does not provide any rationale to argue error in that finding. Plaintiff's argument that the ALJ provided only three reasons to discount her allegations of symptoms without identifying any record evidence that is inconsistent with her allegations ignores that the ALJ stated she had found inconsistencies "for the reasons explained" in her decision (R. 25) and ignores the inconsistencies the ALJ found as summarized supra at 9-13.

As noted above, the ALJ found when Plaintiff was tested for fibromyalgia tender points she also reported a positive control at a thumbnail; her worst problem with physical movements was moderate difficulty hopping; in June 2023 at a pain management appointment Plaintiff reported only 4/10 pain; in May 2023 she wanted medication to help with her mood and reported depression, anxiety, and stress, but she had a normal mood and affect; and at a consultative mental examination in September 2023 the examiner noted that her reported problems were not in agreement with her mental presentation. While not all the inconsistencies found by the ALJ demonstrate inconsistencies between her alleged disabling back pain and the record evidence, they do represent inconsistencies between Plaintiff's alleged symptoms and the record evidence. The fact that many symptoms are not determinable by observation or medical testing is the reason for requiring the ALJ to consider all the evidence to evaluate a claimant's allegations of symptoms. The ALJ did just that, she articulated the inconsistencies she found and provided her rationale for discounting Plaintiff's allegations. That rationale is supported by the record evidence and more is not required. It is not the Commissioner's

burden to prove that Plaintiff is not disabled, it is Plaintiff's burden to prove she is. Plaintiff has not presented evidence which compels finding her symptoms are disabling.

In Plaintiff's view, the diagnostic imaging, physical examination findings, and activities of daily living relied upon by the ALJ are actually consistent with her allegations of symptoms and finding her disabled and should not have been used to discount her allegations of disabling symptoms. As the Commissioner argues, and contrary to Plaintiff's Reply Brief, that argument is a request for the court to reweigh the evidence in Plaintiff's favor, find the evidence consistent with her allegations, and find her disabled. However, it is Plaintiff's burden to prove her limitations are disabling, not the Commissioner's burden to prove they are not disabling. When the evidence is equivocal, such as it is here, Plaintiff may not merely point to evidence which might support her allegations, but she must point to evidence which compels that finding. As noted above, this deference is particularly applicable to determinations regarding the consistency between the claimant's allegations of symptoms and the record evidence. Plaintiff has not made that showing here.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated October 9, 2025, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**